CONNAUGHT LABORATORIES, INC.,
Plaintiff and Counterdefendant,

v.

SMITHKLINE BEECHAM P.L.C. and Smithkline Beecham Corp., Defendants and Counterplaintiffs.

No. MISC. A. 98–24 JJF.

United States District Court,
D. Delaware.

May 29, 1998.

William J. Marsden, and Joan Taft Kluger of Potter Anderson & Corroon, Wilmington, DE, Paul H. Berghoff of McDonnell Boehnen Hulbert & Berghoff, Chicago, IL, for Plaintiff and Counterdefendant.

Richard K. Herrmann and Mary B. Matterer of Stradley, Ronon, Stevens & Young, Wilmington, DE, Richard L. Rainey of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Atlanta, GA, Mark S. Brown of King & Spalding, Washington, DC, Zoltan Kerekes of Smithkline Beecham Corp., King of Prussia, PA, for Defendants and Counterplaintiffs.

J.P. Ellison, Trial Attorney, Office of Consumer Litigation of the United States Department of Justice, Washington, DC, Margaret Jane Porter, Chief Counsel and Christopher McHenry, Associate Chief Counsel of the United States Food and Drug Administration, Rockville, MD, for the United States Food and Drug Administration.

## OPINION

FARNAN, Chief Judge.

Presently before the Court is SmithKline Beecham P.L.C. and SmithKline Beecham Corp.'s Motion To Compel The United States Food And Drug Administration To Comply With Subpoenas (D.I.7) and the Motion Of The United States Food And Drug Administration To Quash Subpoenas (D.I.19). By their Motion, SmithKline Beecham P.L.C. and SmithKline Beecham Corp. (collectively "SmithKline") seek to compel a non-party, the United States Food and Drug Administration ("FDA"), to comply with three subpoenas seeking testimony from two current FDA employees, Drusilla L. Burns and Michael J. Brennan, and from a third person designated by the FDA pursuant to Federal Rule of Civil Procedure 30(b)(6). SmithKline intends to use this testimony in a patent infringement action brought against it by Connaught Laboratories, Inc. ("Connaught") in the United States District Court for the Middle District of Pennsylvania. For the reasons set forth below, the Court will grant SmithKline's Motion and deny the FDA's Motion.

## FACTUAL BACKGROUND

On September 16, 1997, Connaught filed a patent infringement action against SmithKline in the United States District Court for the Middle District of Pennsylvania. In its Complaint, Connaught alleges that SmithKline's sale and importation of INFANRIX®, a vaccine for immunization against diphtheria, tetanus and pertussis, infringes United States Patent 5,667,787 ("the '787 patent"). SmithKline denies Connaught's allegations and has counterclaimed for a declaration that the '787 patent is not infringed, unenforceable, and/or invalid for failing to satisfy the provisions of 35 U.S.C. §§ 102, 103 and/or 112.

The '787 patent relates to the purification of pertactin, the active component of a particular type of pertussis vaccine. The '787 patent claims priority to a UK patent application filed on April 4, 1990. Through the published literature and its own dealings with the FDA, SmithKline contends that it is aware of scientific work done at the FDA concerning purified pertactin occurring well before the April 4, 1990, priority date of the '787 patent. According to SmithKline, such activity constitutes prior art which may render the claims of the '787 patent invalid.

In an effort to obtain additional information to support its theory that the FDA's work is invalidating prior art, SmithKline filed a subpoena for documents relating to the FDA's understanding, examination and use of pertactin. SmithKline also filed an administrative request for testimony of employees involved in the pertactin research, pursuant to 21 C.F.R. § 20.1. While the FDA produced documents, it refused to provide

testimony. SmithKline contends that the testimony is crucial to enhancing the weight and sufficiency of the documents provided by the FDA and necessary to fill in gaps left by the documents.

After the FDA refused to comply with a second request for testimony by SmithKline pursuant to section 20.1, SmithKline served the three subpoenas at issue in the instant Motion. In response to the Motion, the FDA moved to quash the subpoenas. On May 20, 1998, the Court held a hearing on this matter.

## DISCUSSION

In opposition to SmithKline's Motion To Compel and in support of its Motion To Quash, the FDA raises two arguments (1) that section 20.1 vests it with the authority to deny discovery requests and that its decision to deny the request in this case is not arbitrary and capricious and therefore, is entitled to substantial deference, and (2) that sovereign immunity is a bar to the Court's subject matter jurisdiction over this action. With respect to its first argument, the FDA acknowledged at the hearing that the question of whether its interpretation of section 20.1 was arbitrary and capricious would only be in issue if SmithKline were proceeding under the Administrative Procedure Act ("APA"). (Tr. at 18). However, at the hearing, Smith-Kline emphasized that it was not proceeding under the APA, but rather, was proceeding under the discovery rules embodied in the Federal Rules of Civil Procedure. (Tr. at 32–33). Accordingly, the Court will not address the FDA's section 20.1 argument, but will turn instead to the FDA's sovereign immunity argument.

▮ Because SmithKline is not proceeding under the APA, which contains an express waiver of sovereign immunity, the FDA contends that the Court lacks subject matter jurisdiction over the instant action because the United States has not waived its sovereign immunity. While SmithKline acknowledges that a waiver of sovereign immunity would be required to compel federal officials from responding to state court subpoenas, SmithKline contends that no such waiver is needed for a federal court to exercise its subpoena power against federal officials. The Court agrees with SmithKline.

▮ In examining the issue of whether a litigant may compel discovery from a nonparty federal government agency, courts have distinguished between cases in which the underlying action arises in federal court and cases in which the underlying action arises in state court. *See Houston Business Journal, Inc. v. Office of the Comptroller,* 86 F.3d 1208, 1211 (D.C.Cir.1996). When an action arises in state court, the federal government is cloaked by sovereign immunity, and absent a waiver of sovereign immunity, the state court lacks the power to enforce a subpoena. *Id.* Similarly, when a federal court's jurisdiction is predicated upon removal such that its jurisdiction is derived from the state court, the federal court cannot enforce a subpoena against the federal government absent a waiver of sovereign immunity. *Id.* at 1212; *Boron Oil Co. v. Downie,* 873 F.2d 67, 69 (4th Cir.1989) (holding that doctrine of sovereign immunity bars state court, and federal court that gained limited jurisdiction on removal, from compelling EPA investigator to testify). However, in an action in federal court, sovereign immunity does not bar the federal court from enforcing a federal subpoena against the federal government. *Houston Business Journal,* 86 F.3d at 1212 (citing *Exxon Shipping v. United States Dep't of Interior,* 34 F.3d 774 (9th Cir.1994)); *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 398 n. 2 (D.C.Cir.1984) (discussing sovereign immunity and noting that "[s]ince at least 1965 ... this court has assumed the nonapplicability of sovereign immunity" to federal court subpoenas directed to federal agencies). As the Court of Appeals for the Ninth Circuit observed in *Exxon,* applying the doctrine of sovereign immunity to shield government agencies from federal subpoenas would, in effect, "authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena." *Exxon,* 34 F.3d at 778. Because this effect would "raise serious separation of powers questions," the court "decline[d] to hold that federal courts cannot

compel federal officers to give factual testimony." *Id.*

The FDA distinguishes *Exxon* from the instant case, because in that case, the Exxon Shipping Company had filed a separate APA action against the government. For this reason, the FDA contends that "[a]pplication of the *Exxon* analysis outside the context of an APA action is contrary to sovereign immunity." (D.I.30). While the Court recognizes that the Exxon Shipping Company proceeded under the APA, the Court notes, however, that the Ninth Circuit's discussion of sovereign immunity principles was not based on the APA. Indeed, had the court been relying solely on the APA's waiver of sovereign immunity to rebut the government's argument that the authority of agency heads to determine whether government employees may testify is controlled by principles of sovereign immunity, the court would undoubtedly have cited to the APA's express waiver of sovereign immunity. However, in discussing the sovereign immunity issue raised by the government in *Exxon,* the court neither referred to nor cited to the APA, but rather relied on case law, constitutional principles and the Federal Rules of Civil Procedure to conclude that sovereign immunity was inapplicable to shield a federal employee from complying with a federal subpoena. *Exxon,* 34 F.3d at 777–780 (noting that government's sovereign immunity argument would violate separation of powers and the policy favoring full discovery promulgated by the Federal Rules of Civil Procedure). Moreover, courts that have applied the *Exxon* analysis of sovereign immunity have not limited it to cases brought under the APA. *See e.g. Leyh v. Modicon,* 881 F.Supp. 420 (S.D.Ind.1995).

Additionally, the Court's conclusion that the *Exxon* analysis is not limited to proceedings brought under the APA is further bolstered by the *Exxon* court's discussion of the subpoena. While the court recognized, in a footnote, that APA review was available, the court focused on the federal court's ability to review discovery requests pursuant to the Federal Rules of Civil Procedure. *Exxon,* 34 F.3d at 780 (stating that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action"). Accordingly, the Court is not persuaded by the FDA's argument that *Exxon* is inapposite.

As the government did in *Exxon,* the FDA also raises the concern in the instant case that requiring FDA employees to testify will create an undue burden on the FDA's ability to operate. While courts have recognized the legitimacy of such concerns, they have also recognized the district court's ability to balance the government's concerns with the private litigant's interest in obtaining evidence by applying the limitations and protections contained in the Federal Rules of Civil Procedure. *Id.* at 779 (citing Fed.R.Civ.P. 26(c) and Fed R. Civ. P. 45(c)(3) which give courts discretion to quash or modify subpoenas causing "undue burden"). At the hearing in this case, SmithKline expressed a willingness to modify the subpoenas issued in order to meet the FDA's time and location concerns. Having concluded that the subpoenas are enforceable against the FDA, the Court will allow SmithKline and the FDA the opportunity to mutually agree to modifications of the subpoenas that will accommodate the FDA's concerns. However, should SmithKline and the FDA be unable to agree on the modifications, the Court will exercise its authority under Federal Rule of Civil Procedure 45 to modify the subpoenas.

## CONCLUSION

For the reasons discussed, SmithKline's Motion To Compel The United States Food And Drug Administration To Comply With Subpoenas (D.I.7) will be granted and the Motion Of The United States Food And Drug Administration To Quash Subpoenas (D.I.19) will be denied.

An appropriate Order will be entered.